RECEIPT #_____
AMOUNT $_____
SUMMONS ISSUED_____
LOCAL RULE 4.1_____
WAIVER FORM_____
MCF ISSUED_____
BY DPTY. CLK._____
DATE 7-30-04

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JUNE LIFFIN,<br>  Plaintiff<br><br>v.<br><br>BAYER CORPORATION and<br>GLAXOSMITHKLINE formerly<br>SMITHKLINE BEECHAM<br>PHARMACEUTICALS and/or<br>GLAXO WELLCOME INC.<br>  Defendants. | CIVIL NO.<br><br>04-11687 RWZ<br><br>MAGISTRATE JUDGE Collings |

## COMPLAINT AND JURY DEMAND

NOW COMES the Plaintiff, June Liffin, who files this Complaint against Defendants Bayer Corporation ("Bayer") and GlaxoSmithKline ("Glaxo"), formerly SmithKline Beecham and/or Glaxo Wellcome, Inc. In support of her Complaint, the Plaintiff states the following:

### PRELIMINARY STATEMENT

1. This lawsuit is brought by the Plaintiffs arising out of the sale of the prescription drug Baycol. The Defendants knew or should have known that Baycol is and was a dangerous drug.

2. The Defendants unlawfully and fraudulently misrepresented the true nature of Baycol, and in so doing, caused the Plaintiff and many others to become addicted, causing serious and permanent injuries and in some cases death, while boosting substantially the Defendants' profits.

3. The acts of these Defendants constitute participation in one or more enterprises engaged in breach of warranties, negligence, fraud, unfair and deceptive trade practices, breach of fiduciary duty, civil conspiracy, negligent and willful misrepresentations, and fraudulent concealment.

## PARTIES

4. The Plaintiff, June Liffin is a natural person who is domiciled at 14 Fernwood Avenue, Lynn, within the Commonwealth of Massachusetts, and is a citizen thereof;

5. Defendant, Bayer Corporation, is a Pennsylvania corporation with, on information and belief of Plaintiff, its principal place of business in Pennsylvania. At all times relevant hereto, Bayer designed, tested, manufactured, marketed, promoted, distributed and sold within the Commonwealth of Massachusetts, a certain cerivastatin sodium medication known as "Baycol" for the purpose of, *inter alia*, being used and administered by physicians and other health care professionals to lower plasma cholesterol levels in patients.

6. Defendant, GLAXOSMITHKLINE formerly known as SMITHKLINE BEECHAM and/or GLAXO WELLCOME INC., was and still is an North Carolina corporation with, on information and belief of Plaintiff, its principal place of business in North Carolina, engaged in the marketing, distribution and sale within the Commonwealth of Massachusetts, a certain cerivastatin sodium medication known as "Baycol" for the purpose of, *inter alia*, being used and administered by physicians and other health care professionals to lower plasma cholesterol levels in patients.

7. The Plaintiff was prescribed Baycol and has suffered attendant injuries and damages.

## JURISDICTION AND VENUE

8. Defendant, BAYER, is amenable to service of process in this Commonwealth of Massachusetts in that the Defendant, BAYER, is transacting and conducting business in the Commonwealth of Massachusetts, and/or has continuing minimum contacts within the Commonwealth of Massachusetts so that the maintenance of this suit in this jurisdiction would not offend such fair notions of fair play and substantial justice.

9. Defendant, GLAXO, is amenable to service of process in this Commonwealth of Massachusetts in that the Defendant, GLAXO, is transacting and conducting business in the Commonwealth of Massachusetts, and/or has continuing minimum contacts within the Commonwealth of Massachusetts so that the maintenance of this suit in this jurisdiction would not offend such fair notions of fair play and substantial justice.

10. Complete diversity of citizenship does exist between the domicile of the Plaintiff, and that of the Defendant.

11. Plaintiff claims injuries in excess of $75,000.

12. Plaintiff voluntarily submits to personal jurisdiction in the Commonwealth by filing this Complaint and jury demand herein.

## STATEMENT OF FACTS

13. The Plaintiff, June Liffin, was prescribed Zocor for treatment of high cholesterol without suffering side effects. On October 4, 2000, her prescription was switched to Baycol 0.4 mg due to changes in her insurance coverage.

14. On April 4, 2001, the Plaintiff's prescription was increased to Baycol 0.8 mg.

As time passed, she began suffering from side effects of Baycol on a more frequent basis and her general demeanor and physiological responses began to change rapidly. On or about August 6, 2001, the Plaintiff was diagnosed with renal failure secondary to Baycol.

15. Plaintiff was not adequately warned of the dangers of ingesting Baycol;

16. Plaintiff suffered and/or is in danger of suffering from severe injuries as a direct and proximate result of ingesting Baycol.

17. Plaintiff relied on statements made by the Defendants and the Plaintiff's physician in treating Plaintiff with Baycol.

18. Defendant, GLAXO, marketed and was in the regular business of selling Baycol until August 8, 2001, when the drug was withdrawn from the market upon recommendation of the United States Food and Drug Administration ("FDA").

19. Defendant, BAYER, manufactured and was in the regular business of selling Baycol until August 8, 2001, when the drug was withdrawn from the market upon recommendation of the United States Food and Drug Administration ("FDA").

20. Defendants knew of the dangerous side effects and defective nature of Baycol prior to submitting approval applications to the FDA, and continuing thereafter until withdrawal from the market.

21. Defendants actively concealed these dangers from the FDA, the Plaintiff and the United States and International high cholesterol market.

22. Defendants warranted and represented that the risks of Baycol were outweighed by the benefits, and that the drug was therefore safe.

Patients, doctors, pharmacists, and others, including the Plaintiff and the public, have the right to rely on the public agencies and the drug manufacturers to be truthful and to report all known contra-indications for the use of the drug.

23. The Plaintiff justifiably relied on the Defendants' marketing and assurances of its product, Baycol and such reliance caused Plaintiff to suffer severe injuries and damages. The Plaintiff has suffered and currently suffers injuries, including but not limited to Rhabdomylosis, partial paralysis, joint and muscle pain, fatigue, dark urine, and pain and suffering.

24. Defendants have a special relationship with prescribing physicians and users of their pharmaceutical products that statutorily requires disclosure of material facts about new or newly appreciated heightened risks associated with their drugs. The duties include the following:

a. Defendants must monitor the scientific literature and developments touching upon their drugs.

b. Defendants must make timely and adequate warnings to the medical profession.

c. Defendants must "describe those situations in which the drug should not be used because the risk of use -clearly outweighs any possible benefit. These situations include...

> [1] concomitant therapy... or
> [2] continued use of the drug in the face of an unacceptably hazardous adverse reaction." 21 C.F.R. § 201.57(d).

d. Defendants' drug labeling "shall describe serious adverse reactions and potential M safety hazards, limitations in use imposed by them, and steps that should be taken if they occur." 21 C.F.R. § 201.57 (e).

e. Defendants' drug labeling "shall be revised to include a warning as soon as there is reasonable evidence of an association of a serious hazard with a drug; a causal relationship need not have been proved." 21 C.F.R. § 201.57 (e).

f.    Defendants' drug labeling must "contain information regarding any special care to be exercised by the practitioner for safe and effective use of the drug." 21 C.F.R. § 201.57 (f)(1).

g.    Defendants' labeling "shall contain information to be given to patients for safe and effective use of the drug," e.g. 21 C.F.R. § 201.57 (f)(2).

h.    Defendants must be sure that their labeling is not misleading by reason of failing to reveal facts that are material in light of other representations made or suggested by statements. 21 C.F.R. § 1.21 (a)(1).

i.    Defendants must be sure that their labeling is not misleading by reason of failing to reveal facts material with respect to consequences which may result from the use of the drug under "such conditions of use as are customary or usual." 21 C.F.R. §1.21 (a)(2).

j.    Defendants must warn when there is a common belief about the safety and efficacy of a particular indication but there is a lack of evidence regarding the safety of that use, because the absence of safety testing is a material fact, and the failure to reveal such absence of safety testing in the drug's labeling causes the labeling to be misleading. 21 C.F.R. §§ 1.21 and 201.5 7(c)(3)(iv).

Defendants knew these regulations were in effect and applied to Baycol. These regulations were intended to protect consumers and prescribing physicians from risks newly known or appreciated by the Defendants.

25.    Defendants knowingly withheld from or misrepresented to the FDA, prescribing physicians, and/or the consuming public information known to be material and relevant to the risk of addiction that accompanied the use of Baycol. Prescribing physicians and patients, including the Plaintiff, relied on the less than accurate information about the risks associated with ingesting Baycol.

26.    Defendants' non-disclosures and misrepresentations were substantial factors contributing to the damages suffered by the Plaintiffs.

27.    Defendants intended to deceive the public into believing that Baycol was safe.

28.    Defendants knew or should have known that persons ingesting Baycol would

experience serious side effects and/or death.

29. Defendants failed to provide the adequate warnings to the Plaintiff and/or the Plaintiff's physician regarding the potential for harm.

30. Defendants conduct in marketing and selling Baycol amounted to extreme and outrageous conduct.

31. Defendants knew or should have known that the realization of these side effects and/or resulting injuries by an individual treating high cholesterol with Baycol would cause severe emotional distress.

32. Defendants fraudulently influenced the approval of Baycol.

## COUNT I
### Negligence

33. The preceding paragraphs are incorporated by reference as if fully set forth herein:

34. At all relevant times, Defendants, as pharmaceutical manufactures and marketers had a duty to the Plaintiff to exercise reasonable care in the design, manufacture, testing, processing, advertising, marketing, testing, labeling, assembling, packaging, distribution, and sale of the drug Baycol.

35. The Defendants violated the standard of care, and failed to exercise due care when they:

> a) Failed to accompany their product with proper warnings regarding the possible adverse side effects, i.e., the warnings given did not actually reflect the symptoms, scope or severity of the side effects;
>
> b) Failed to conduct adequate pre-clinical testing and post-marketing surveillance to determine the safety of Baycol,

   c) Failed to provide adequate instruction and training to medical care providers for appropriate use of Baycol;

   d) Failed to warn the Plaintiff prior to actively encouraging use of Baycol either directly or indirectly, orally or in writing, about the following:

      1. The need for comprehensive, regular monitoring to ensure discovery of potentially serious side effects;

      2. The possibility of dying or becoming disabled as a result of the drug's use and/or having to undergo liver or kidney surgery to correct damage;

      3. That liver or muscle enzymes may become dangerously high and may result in permanent injuries;

      4. Were otherwise careless or negligent.

36. The Defendants knew or should have known that Baycol caused unreasonably dangerous health risks of which the Plaintiff would not be aware. The Defendants nevertheless advertised, marketed, sold, and distributed the drug knowing that there were safer alternative methods and products for treatment of high cholesterol.

37. Defendants knew or should have known that consumers such as the Plaintiff would foreseeably suffer injury as a result of the Defendant's failure to comply with the standard of care and to exercise ordinary care as described above;

38. Defendants' negligence was the actual cause to the Plaintiff sustaining pain, suffering mental anguish, disabilities, inconvenience, the cost of hospital services, lost future earnings, and other damages;

39. Defendants' negligence was a proximate cause to the Plaintiff sustaining pain,

suffering mental anguish, disabilities, inconvenience, the cost of hospital services, lost future earnings, and other damages;

40. Defendants actually knew of Baycol's defective nature, as herein set forth, but continued to design, manufacture, market, sell and/or provide Baycol so as to maximize sales and profits at the expense of the health and safety of the public, in conscious disregard for the foreseeable harm caused by Baycol. Defendants' conduct exhibits such an entire want of care as to establish that their actions were a result of malice, fraud, ill will, recklessness, or willful and intentional disregard of the Plaintiff's rights. Accordingly, Plaintiff is entitled to recover actual and punitive damages.

## COUNT II
### Strict Product Liability
### Pursuant to Restatement (Second) of Torts Section 402(a)

41. The preceding paragraphs are incorporated by reference as if fully set forth herein.

42. The Defendants' Baycol was manufactured, designed, marketed, distributed, and sold by the Defendants with a design defect, which caused it to be unreasonably dangerous for its ordinary uses. Further, said design defect was present in the Baycol when it left the hands of the manufacturer, and said Baycol was in a substantially unchanged condition at the time of its use by the Plaintiff, who was using it in the manner in which it was intended. The defective and unreasonably dangerous condition of Baycol was a proximate cause of the injury and damages

43. The Baycol, at the time of its manufacture, sale, and distribution to the Plaintiff was defective and unreasonably dangerous to the Plaintiff and other users or consumers for the following reasons, among others:

   a. It failed to contain adequate warnings or instructions;

   b. It was designed in a defective manner;

   c. It breached an express warranty and/or failed to conform to Other express factual representations upon which the Plaintiff Justifiably relied in electing to use Baycol;

   d. The product's defective condition rendered it unreasonably dangerous to the Plaintiff and to other users and consumers; and

   e. The defective and unreasonably dangerous condition of the Defendants' Baycol proximately caused the injuries and damages for which the Plaintiffs seek recovery.

44. Additionally, Baycol is and was defective and unreasonably dangerous because at the time the product left the control of the Defendants and during the time that the Plaintiff purchased and used Baycol:

   a. The Defendants knew, or in light of reasonably available knowledge or in the exercise of reasonable care should have known about the danger that caused the injuries and damages for which the Plaintiff seeks recovery; and

   b. The product failed to function as expected, and any utility, usefulness, practicality, or desirability of the product was outweighed by the danger created by Plaintiff's use of Baycol. Furthermore, it was feasible to inform buyers and/or users of the Baycol that it was unsafe, defective, unreasonably dangerous, and/or prone to cause, allow, or fail to prevent addiction and other injuries from occurring. The Defendants failed to adequately inform buyers or users of Baycol, government agencies, physicians, pharmacies, and the general public of this information.

45. The Defendants knew or in light of reasonably available knowledge should have known about the danger that caused the injuries and damages for which the Plaintiffs

seek recovery, and that the Plaintiff and other ordinary users or consumers would not realize the product's dangerous condition. The Defendants' product warnings and instructions were inadequate because the warnings and/or instructions failed to communicate sufficient information on the dangers and safe use of the product taking into account the characteristics of, and the ordinary knowledge conman to, a physician or other licensed professional who prescribes the Baycol.

46. The Defendants knew or should have known through tests, reports, studies, and otherwise, the existence of which was unknown to the Plaintiff, of the health hazards inherent in the use of the Baycol they were selling or encouraging the use of through marketing, sales, and otherwise. Instead of warning the Plaintiff, other intended users, government agencies, and the general public about these dangers, the Defendants ignored or actively and fraudulently concealed such information, or condoned such concealment, and commanded, directed, advised, encouraged, aided, ordered or abetted others in so doing in order to gain governmental approval for and sell said Baycol. Said actions or inactions constitute gross negligence and show a callous disregard for the rights and safety of others giving rise to the imposition of punitive damages against the Defendants.

47. The Defendants injected said defective product into the stream of commerce;

48. As a direct and proximate, result of the tortuous conduct of the Defendants, the Plaintiff suffered personal injury, grave suffering and agony, and other damages. Plaintiff would further show that as a direct and proximate result of the Defendants' use of the defective and unreasonably dangerous Baycol, the Plaintiff suffered physical pain and anguish, disability and loss of the enjoyment of life.

49. Wherefore, Plaintiff is entitled to damages as may be set by the court and jury.

## COUNT III
## Breach of Express/Implied Warranties
## Pursuant the Uniform Commercial Code

50. Plaintiff hereby incorporates by reference, as though fully set out herein, each of the paragraphs previously set forth herein;

51. Defendants are the manufacturer supplier of Baycol and placed the product into the stream of commerce in a defective and unreasonably dangerous condition in that the foreseeable risks exceeded the benefit associated with the design or formulation.

52. Defendants supplied Baycol the Plaintiff;

53. Baycol, as manufactured and/or supplied by Defendants, was defective in design or formulation in that when such drug was placed in the stream of commerce, it was unreasonably dangerous, was more dangerous than an ordinary consumer would expect, and more dangerous than other forms of treatment for high cholesterol.

54. The Baycol manufactured and/or supplied by the Defendants, and provided to the Plaintiff, was defective due to inadequate warnings or instruction because the manufacturers knew or should have known that the product created a risk of harm to consumers and Defendants failed to adequately warn of said risk.

55. Because the Defendant knew that the Plaintiff would use Baycol to safely treat high cholesterol, and that Baycol did not safely treat high cholesterol, it was not fit for its particular purpose;

56. As a proximate cause of the defective and unreasonably dangerous condition of Baycol, as manufactured and/or supplied by Defendant, and as a direct and proximate result of the negligence, carelessness or other wrongdoing and action(s) of Defendant described herein, the Plaintiff suffered those damages as set forth with particularity above;

57. Defendant actually knew of Baycol's defective nature but continued to design, manufacture, market and sell Baycol so as to maximize sales and profits at the expense of the public health and safety, in conscious disregard of the foreseeable harm caused by Baycol. Defendant's conduct exhibits such an entire want of care as to establish that their actions were a result of malice, fraud, ill will, recklessness, or willful and intentional disregard of Plaintiff's rights. Plaintiff is entitled to punitive damages.

## COUNT IV
### Civil Battery

58. Plaintiff hereby incorporates by reference, as though fully set out herein, each of the paragraphs previously set forth herein;

59. As the facts set forth herein, Defendant acted intending to cause serious bodily harm to the body of the Plaintiff, or that of a third person, and such serious bodily harm did in fact occur, and/or there existed a substantial likelihood that such bodily harm would occur, and/or the Defendant acted in such a reckless manner, and in such willful and wanton dereliction of duties, that such bodily harm occurred.

## COUNT V
### Intentional Infliction of Emotional Distress

60. Plaintiff hereby incorporates by reference, as though fully set out herein, each of the paragraphs previously set forth herein;

61. Defendant's conduct in marketing a drug as safe, knowing that the drug could threaten one's life is extreme and outrageous conduct;

62. Defendant acted intending to cause severe emotional distress to the Plaintiff, and/or acted in willful, wanton, and reckless disregard of its duties, and/or there existed substantial likelihood that severe emotional distress would result; and

63. Severe and emotional distress did result.

## COUNT VI
### Negligent Infliction of Emotional Distress

64. Plaintiff hereby incorporates by reference, as though fully set out herein, each of the paragraphs previously set forth herein;

65. Defendant breached a duty owed to the Plaintiff directly and proximately causing Plaintiff's severe emotional distress;

66. Defendant's conduct in marketing a drug as safe, knowing that the drug could threaten one's life is extreme and outrageous conduct;

67. Severe and emotional distress occurred.

## COUNT VII
## Fraud/Misrepresentation

68. Plaintiff hereby incorporates by reference, as though fully set out herein, each of the paragraphs previously set forth herein;

69. Defendant falsely represented the safety of Baycol to the Plaintiff, intending to induce the Plaintiff to rely on Defendant's assurance of safety, and therefore use Baycol to treat the Plaintiff's high cholesterol infliction;

70. Plaintiff was justified in relying on the statements of a manufacturer, the Defendant herein;

71. Plaintiff was injured by such justified reliance.

The Plaintiff would show that:

    a. There was a representation;

    b. The representation was false;

    c. The representation was material;

    d. The Defendants knew of the representation's falsity and/or that it was made with the reckless disregard for its truth and falsity;

    e. The Defendants intended that it would be acted upon by the Plaintiff hearing or reading the representations;

    f. The Plaintiff was ignorant of the falsity of the representation;

    g. The Plaintiff relied on its truth;

    h. The Plaintiff had a right to rely thereon; and

    i. The Plaintiff suffered injuries as a subsequent and proximate result.

Therefore, the Plaintiff is entitled to actual and punitive damages as the Court and jury may set.

## PLAINTIFF DEMANDS TRIAL BY JURY ON ALL ISSUES SO TRIABLE

**Wherefore,** for the reasons stated herein, Plaintiff June Liffin respectfully request this Honorable Court to grant him judgment in excess of $75,000 and for other such relief as this Court deems just.

Dated: July 22, 2004

                                        Respectfully Submitted,
                                        June Liffin,
                                        By and Through her Attorneys,

                                        **SAMUEL M. POLLACK, ESQ.**
                                        BBO#560617
                                        **ALBERT FLANDERS, ESQ.**
                                        BBO#567076
                                        POLLACK & FLANDERS, LLP
                                        50 Congress Street
                                        Boston, Massachusetts 02109
                                        Phone: (617)259-3000
                                        Facsimile: (617)259-3050

Of Counsel:

**KENNETH SUGGS, ESQ.**
**SUGGS & KELLY, PA**
500 Taylor Street
Columbia, SC 29201

**ROBERT K. JENNER**
**JANET & JENNER, LLC**
1829 Reisterstown Road, Suite 320
Baltimore, Maryland 21208